**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| LAURA AKINS,<br>Plaintiff,<br>v.<br>MICHAEL ASTRUE, Commissioner of the Social Security Administration,<br>Defendant. | ) | NO. EDCV 08-01573 (SS)<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff Laura Akins ("Plaintiff") brings this action seeking to reverse the decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her application for Social Security Income benefits and to direct the Commissioner to pay Supplemental Security Income benefits. In the alternative, Plaintiff asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. The parties filed a joint stipulation

on July 17, 2009. For the reasons stated below, the decision of the Agency is REVERSED AND REMANDED for further proceedings.

**PROCEDURAL HISTORY**

On November 6, 2003, Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits claiming that she became disabled on December 4, 2002. (Administrative Record ("AR") 57-59). The Agency denied her application initially and upon reconsideration. (AR 43, 48). Plaintiff submitted a request for a hearing on July 6, 2004 (AR 53), which was held before Administrative Law Judge ("ALJ") Helen Hesse on May 18, 2005. (AR 276-321; 8-17).

On June 7, 2005, the ALJ issued an unfavorable decision, (AR 8), and on August 1, 2005, Plaintiff filed a Request for Review of the Hearing Decision. (AR 6). The Appeals Council denied review of the decision on December 2, 2005. (AR 3-5). Plaintiff then commenced a civil action, Akins v. Barnhart, EDCV 06-33 SS, resulting in a March 5, 2007 Memorandum Decision and Order, (AR 378), remanding the case to the Commissioner of Social Security. (AR 388). The Appeals Council remanded the case for further proceedings on August 23, 2007. (AR 375).

On April 30, 2008, a hearing was held before ALJ Helen Hesse. (AR 376). An unfavorable decision issued on May 13, 2008. (AR 322). Plaintiff then commenced the present action.

\\

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

           disabled. If not, proceed to step four.

  (4)  Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

  (5)  Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional

---

[2] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

(strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date, and that the three-month period in 2005 when Plaintiff worked was an unsuccessful work attempt and not substantial gainful activity. (AR 327). At step two, the ALJ determined that Plaintiff's L5-S1 posterior fusion, chronic pain syndrome, and COPD are severe, but that her mental impairments of depression and history of substance abuse, considered singly and in combination, are non-severe. (AR 327). The ALJ reached the latter determination after considering the four broad functional areas of daily living set out in the disability regulations for evaluating mental disorders (20 C.F.R. § 416.9290a), finding that Plaintiff's mental impairments cause mild limitations in the first three functional areas (activities of daily living, social functioning and concentration), and no limitation in the fourth area (decompensation). (AR 327-28).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 328). Specifically, the ALJ found that Plaintiff could:

[S]it 6 hours in an 8 hour day, stand and walk 4 hours in an 8 hour day, changing positions at normal breaks. She should avoid uneven terrain. She can occasionally climb stairs but not ladders. She can occasionally bend, stoop, kneel, crouch, and crawl. She can frequently balance. She should avoid unprotected heights. (AR 328).

The ALJ reviewed numerous treatment records, finding, inter alia, that Plaintiff's post-surgery notes from December 2003 indicated a "good result". (AR 329). The ALJ found nearly all evidence to the contrary to be objectionable. Physical therapist Sandra Raede's diagnosis of limitation due to pain was discounted as an unacceptable medical source. (Id.). A State Agency psychiatrist's conclusion that Plaintiff had mental ability to carry out only simple repetitive tasks was rejected for lack of objectivity. (AR 330). Bart Barrett, M.D., who in June 2004 diagnosed Plaintiff as "disabled due to pain," was discredited as a biased source. (Id.). In May 2005, Hans Geisse, M.D. diagnosed Plaintiff with chronic pain but this was also rejected for lack of objectivity. (AR 331). A diagnosis of fibromyalgia in June 2005 was rejected on grounds of subjectivity. (Id.).

Moreover, in February 2008, Dr. Joseph Yakira, M.D., and therapist John Cyr evaluated Plaintiff and determined she was unable to work. (Id.). The ALJ rejected this opinion because it was not an acceptable medical source. (Id.). A March 2008 psychiatric evaluation by Romauldo Rodriguez, M.D., concluded that Plaintiff was slightly limited in her ability to perform work activities on a consistent basis, but the ALJ rejected this limitation, given the "entirely normal mental status exam"

upon which it was based. (AR 331-32; 655). In Dr. Joseph Yakira's April 2008 psychiatric assessment, he noted moderate to extreme limitations in all areas of work related function. (AR 657). The ALJ rejected this assessment because it was "not supported by any objective medical findings" and because it was "inconsistent with substantial evidence of record." (AR 332).

The ALJ relied on Dr. Thomas Dorsey's orthopedic evaluation, which concluded that the 2003 surgery had a good result, (AR 330), and on Dr. Bahaa Girgis's January 2008 opinion, which concluded that Plaintiff had no motor and sensory deficits, but should refrain from activities requiring agility. (AR 331). The ALJ also relied on Dr. Joseph Jenson's expert testimony from the April 2008 hearing. (AR 332).

After considering the medical evidence and testimony, the ALJ found at step four that Plaintiff's past work as billing clerk did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (AR 333). Vocational expert Stephen Berry's testimony supported the ALJ's RPC findings. (Id.). Finally, at step five, the ALJ found that Plaintiff was not under a disability as defined in the Social Security Act. (AR 333-34).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.

Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

## DISCUSSION

### A. The ALJ Failed To Provide Specific And Legitimate Reasons For Rejecting Dr. Yakira's Opinion

Plaintiff contends that the ALJ erred when she mischaracterized Dr. Joseph Yakira, M.D., as a therapist and not a treating physician, and that this led to further error when she concluded that Dr. Yakira was "not an acceptable medical source under the Regulations (20 CFR 404.1513)." (AR 331). The Court agrees.

\\

The Regulations list "licensed physicians (medical or osteopathic doctors)" among acceptable medical sources to establish an impairment. 20 C.F.R. 404.1513(a)(1). Joseph Yakira, M.D., is a psychiatrist. (AR 487). Dr. Yakira's signature appears following the closing salutation of a February 4, 2008 medical opinion letter issued by the Department of Psychiatry at Kaiser Permanente in Corona, California. (Id.). Dr. Yakira signed the letter as "Joseph Yakira, M.D., Psychiatrist," and affirmed that both he and therapist John Cyr were treating Plaintiff. (Id.). The ALJ therefore clearly erred in concluding that the letter was not submitted by an acceptable medical source, as the record indicates that Dr. Yakira is a psychiatrist, i.e., a licensed physician.

Furthermore, where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id. The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). As a treating physician, Dr. Yakira's opinion, if contradicted, could only be rejected with "specific and legitimate reasons."

The ALJ found that Dr. Yakira's opinion was "inconsistent with substantial evidence of record," (AR 331-32), but she failed to state specific reasons for rejecting Dr. Yakira's opinion. In April 2008, Dr.

Yakira administered a psychiatric examination and completed a detailed assessment of Plaintiff's mental/emotional capabilities. (AR 657). Dr. Yakira found "moderate" to "extreme" limitations in Plaintiff's ability to perform most work related activities. (AR 332; 657-58). The ALJ failed to offer specific or legitimate reasons to reject this opinion.

On March 10, 2008, Dr. Romauldo Rodriguez examined Plaintiff and concluded that she only suffered "slightly" in the same areas. (AR 331-32; 655). The ALJ apparently relies on this single discrepancy to conclude that Dr. Yakira's medical opinion is inconsistent with "other record evidence". However, more is necessary to satisfy the "specific and legitimate reasons" standard. Accordingly, because the ALJ incorrectly concluded that Dr. Yakira was not an acceptable medical source and because the ALJ did not provide specific and legitimate reasons to reject his opinion, remand is required.

**B. <u>The ALJ Erred At Step Two When She Found That Plaintiff's Mental Impairment Was Not Severe</u>**

Plaintiff argues that the ALJ did not properly consider the severity of her mental impairment. Specifically, Plaintiff contends that the ALJ failed to give appropriate weight to Dr. Yakira's opinion concerning her mental impairment. (AR 331). As there was significant evidence of a severe mental impairment, the Court finds that the ALJ failed to properly assess Plaintiff's mental impairment at step two.

By its own terms, the evaluation at step two is a <u>de minimis</u> test intended to weed out the most minor of impairments. <u>See</u> <u>Bowen v.</u>

Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.d3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a de minimis screening device to dispose of groundless claims (quoting Smolen, 80 F.3d at 1290)). An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290 (internal quotations and citations omitted).

Here, the ALJ applied more than a de minimis test when she determined that Plaintiff's mental impairment was not severe. (AR 327-28). As early as September 15, 2003, Plaintiff was taking prescription Paxil to treat depression and anxiety. (AR 70; 119). In a psychiatric review dated January 30, 2004, Dr. Viliam Jones, M.D., diagnosed Plaintiff with affective disorder and depressive syndrome characterized by appetite disturbance, sleep disturbance, decreased energy and difficulty concentrating. (AR 114-47). Dr. Jones found moderate limitations in three out of four functional areas described in the Regulations (20 C.F.R. § 416.920a). (AR 154).

In February 2008, Dr. Yakira diagnosed Plaintiff with "major depression, recurrent, moderate with the symptoms of depression and anxiety." (AR 487). He noted that Plaintiff takes three different psychotropic medications, Celexa 40 mg, Lorazepam 1 mg, and Trazadone 50 mg, to treat her condition. (Id.). Dr. Rodriguez corroborated this in his March 10, 2008 report, noting that Plaintiff was taking two anti-depressants (Trazadone and Celexa) and two anti-anxiety drugs (Klonopin and Ativan), without which she reported experiencing, inter alia,

depression, irritability, crying spells, and suicidal tendencies. (AR 649-50).

Additionally, Dr. Yakira noted in a work capacity evaluation dated April 15, 2008 that Plaintiff suffered extreme limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (AR 657). He further noted that Plaintiff suffered extreme limitations in her ability to work in coordination with or proximity to others without being distracted. (Id.). Moreover, Dr. Yakira found that Plaintiff suffered extreme limitations in her ability to accept instructions and respond appropriately to criticism from supervisors. (AR 658).

Dr. Yakira also noted that Plaintiff suffered marked limitations in her ability to maintain attention and concentration for extended periods, to make simple work-related decisions, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. (Id.). Finally, Dr. Yakira determined that as of April 15, 2008, Plaintiff's impairment could be expected to last at least twelve months, missing at least three days per month due to her impairments and treatments. (Id.). Dr. Yakira's assessment shows that Plaintiff's mental impairment is sufficient to satisfy the de minimis test for severity.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the

five step sequential evaluation process with additional regulations.[3] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-915 (9th Cir. 1998) (citing 20 C.F.R. § 416.920a) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). (emphasis added). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusion" regarding the plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the cuntional areas described in [§ 416.920a(c)(c)]." 20 C.F.R. § 416.920a(d)(3),(e)(2).

---

[3] These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed analysis. Social Security Ruling 98-8p, 1996 WL 37184 at *4.

The regulations describe an impairment as follows:

> A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1-2).

The ALJ failed to account for Dr. Yakira's findings when she evaluated Plaintiff's mental impairment. (AR 327-28). Rather, the ALJ determined that Plaintiff's medically determinable mental impairments were mild to non-existent. The ALJ stated that she gives little weight to Dr. Yakira's conclusions because "the determination of disability is reserved to the ALJ." (AR 331). However, the ALJ improperly dismissed substantial evidence of a mental impairment that has more than a de minimis effect on Plaintiff's ability to perform basic work activities and failed to properly apply the Agency's own regulations concerning mental impairments. Therefore, the ALJ's conclusions regarding the severity of Plaintiff's mental impairment were erroneous.

C. **<u>The ALJ Should Have Considered The Side Effects Of Plaintiff's Medication</u>**

Plaintiff contends that the ALJ's failure to consider Plaintiff's prescribed type, dosage, effectiveness, or possible side effects of these medications. The Court agrees.

In evaluating symptoms, Social Security Ruling (SSR) 96-7p specifically requires consideration of the "type, dosage, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." (<u>See also</u> 20 C.F.R. § 404.929(c)(3)(iv)). Plaintiff's medication as of February 4, 2008, as referenced above, included Celexa 40 mg, Lorazepam 1mg, Clonazepam 1 mg and Trazadone 50 mg. (AR 487). In addition to these psychotropic medications, Plaintiff reported that as of February 2008 she took Methadone 10 mg, Hydrocodone-Acetaminophen 10-325 mg, Cyclobenzaprine 10 mg, Chantix 1mg, Citalopram 20 mg, Etodolac 400 mg, Lactulose 10 g, Famotidine 40 mg and Furosemide 40 mg. (AR 568). In 2004, Plaintiff testified that she has experienced unusual drowsiness and absentmindedness due to her prescribed medications. (AR 295). In April 2008, Plaintiff testified that her medications cause side effects such as lethargy, forgetfulness, and difficulty concentrating. (AR 357-58).

The ALJ failed to consider these side effects when she determined Plaintiff's residual functional capacity. The Court finds that Plaintiff's side effects should have been considered and the ALJ's failure to do so was error.

The Court does not reach the remaining issues because remand is appropriate on the issues discussed above.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this order and the Judgment on Counsel for both parties.

DATED: September 14, 2009.

/S/

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE